MADDOX, Justice.
This appeal involves a dispute between two electrical suppliers over the right to supply retail electrical power to a new radio station that is located on land that lies in both Shelby and St. Clair Counties, but outside municipal corporate limits. There are two basic legal issues presented. One relates to the proper venue of the action and the other involves the proper interpretation of legislative acts that regulate supplying electricity to private customers. Because we reverse and remand this case for further proceedings in Shelby County, we do not address the second issue.
*911 Each of these legal questions requires an interpretation of the Alabama Electric Service Territory Acts, Ala.Code 1975, §§ 37-14 — 9 and -37 (hereinafter the “Territory Acts”). In an earlier case we wrote:
“In 1984, the Alabama Legislature enacted the 1984 Service Territories for Electric Suppliers Act, codified at Ala. Code 1975, §§ 37-14-1 through 37-14-17. Subsequently, in Dixie Electric Cooperative v. Citizens of the State of Alabama, Civil Action No. CV~84-V-891-N, the United States District Court for the Middle District of Alabama declared that legislation invalid. In response to the district court’s decision, the Alabama Legislature enacted Ala.Code 1975, §§ 37-14-3 through 37-14-40, the 1985 Service Territories for Electric Suppliers Act. Section 37-14-40, part of the 1985 Act, provides that the 1984 Act shall remain in effect in the event that the 1984 Act is determined on appeal to be valid. The Court of Appeals for the Eleventh Circuit vacated the district court’s orders and remanded the case in Dixie Electric Cooperative v. Citizens of the State of Alabama, 789 F.2d 852 (11th Cir.1986), rehearing denied, 794 F.2d 687 (11th Cir.1986).”
Wiregrass Elec. Co-op. v. City of Dothan, 605 So.2d 1207, 1208 (Ala.1992).
Many of the facts are undisputed. Eternal Word Radio Network (“EWRN”) is a nonprofit Alabama corporation formed in 1981 to broadcast religious programming in the United States, Canada, and Mexico. In 1991, when EWRN was making plans to locate a new radio station in Vandiver, Alabama, EWRN requested proposals from both Alabama Power Company (“APCo”) and Coosa Valley Electric Cooperative, Inc. (“Coosa Valley”), for supplying electric service to its new station. After receiving proposals from both Coosa Valley and APCo, EWRN contracted with APCo for APCo to supply electricity. To serve EWRN’s Vandiver site, APCo proposed to construct a 115-kv transmission line, at an approximate cost of $1,000,000; to do so required APCo to obtain rights-of-way over various properties, including some owned by a director and members of Coosa Valley. That director and those members filed documents in opposition to APCo’s application for condemnation that APCo had filed in the Probate Court of Shelby County.[1] Subsequently, Coosa Valley filed the instant action against APCo in the St. Clair County Circuit Court, challenging APCo’s right to provide service to the EWRN station. Coosa Valley claimed that APCo had violated the Territory Acts, based upon EWRN’s alleged failure to achieve normal operations and its resulting inability to reach an electrical demand of 2500 kilowatts within six month from the date that APCo first provided electrical service to EWRN. The Territory Acts generally provide that if an electrical supplier is found in violation of the Territory Acts, the rightful supplier is entitled to an injunction requiring the offender to remove its facilities, and to damages in the amount of 25% of the gross revenues derived by the offending supplier from the customer in question, plus reasonable costs incurred during litigation.
APCo timely moved to transfer the action to the Shelby County Circuit Court; the Circuit court denied the transfer. The court entered a judgment ordering APCo to remove its facilities from EWRN’s premises and to discontinue its service to EWRN. The court further ordered APCo to pay Coo-sa Valley the statutory penalty of 25% of APCo’s gross revenues from its service to EWRN beginning on September 20, 1993, and ordered the parties to negotiate the amount of litigation expenses Coosa Valley should be allowed to recover. The trial court granted APCo’s motion for a stay of its order pending this appeal by APCo.
The main dispute in this case involves the parties’ interpretation of the exception to the “closest supplier rule.”[2] Each party contends it had the right to furnish electrical power to the EWRN facility.
*912 It is undisputed that Coosa Valley’s lines were closer to the EWRN facility than were APCo’s lines; therefore, the question for the trial court is whether APCo established an exception to the closest supplier rule. The trial court held that APCo had not shown that the exception applied.
The evidence shows that EWRN initially planned to install and operate two shortwave transmitters with a maximum output of 500 kw each[3]; that would not have qualified the station as a new industry under the 2500-kw statutory exception to the “closest supplier” rule. Before EWRN signed an agreement for APCo to furnish the electrical service, EWRN had decided to install four transmitters at the Vandiver site, after a similar project in Rome, Italy, was canceled. EWRN then projected its total electrical consumption to exceed the 2500-kw level at full power on all four transmitters, and it signed an electric supply contract with APCo for service to the site beginning in October 1992. APCo constructed a line to provide service to the site, and the date of initial service was October 30, 1992. EWRN’s president testified that EWRN was satisfied with APCo’s service and that it preferred APCo as an electrical supplier.
EWRN began broadcasting on December 28, 1992, with one transmitter. Its initial electric usage was much lower than had been projected. EWRN’s electric bills for the first 6 months of APCo service (October 30, 1992, to May 1, 1993) showed that the highest level reached was 1814 kw in April 1993, well below the 2500-kw minimum for APCo’s service to be allowed under the statutory exemption. This was also the highest amount used in the first six months of EWRN’s actual broadcasting (December 28, 1992, to July 1, 1993). However, the record does reflect that APCo presented evidence *913 that EWRN had actually reached the 2500-kw level in September 1993.
In addressing whether the trial court should have granted APCo’s motion to transfer the case to Shelby County, we are required to interpret provisions of the Territory Acts, specifically § 37-14-9 and § 37-14-37.[4] For the purposes of this appeal, we look at the 1984 Act (§ 37-14-9), which controls the venue of actions such as this one. Section 37-14-9(b) provides that “[i]f an electric supplier believes that another electric supplier has already rendered or extended electric service at retail to a premise which was designated to be served by the aggrieved electric supplier” and if the offending supplier does not cease rendering services, then “the aggrieved electric supplier may file suit in the circuit court for the judicial circuit in which the rendition or extension occurs to enjoin the offending electric supplier from continuing such rendition or extension and for damages.” (Emphasis added.) See § 87-14-37(b).
In view of the fact that the land on which the radio station is constructed is located partly in Shelby County and partly in St. Clair County, we must determine what the Legislature intended when it used the word “premise” and the phrase “in the circuit court for the judicial circuit in which the rendition or extension occurs.”[5]
Coosa Valley argues that the trial court properly interpreted the venue provisions of the Territory Acts when it denied APCo’s motion to transfer the action to Shelby County. It says that the undisputed facts show that the EWRN’s site is a single facility that straddles two counties, and that, based on the 1984 Act’s definition of “premises,” venue was proper in St. Clair County or in Shelby County, citing Ex parte Nottingham, 522 So.2d 777, 779 (Ala.1988) (“[wjhen venue is proper in two or more counties the plaintiff may elect the county in which to proceed, and when this election is made venue will not be disturbed”); Medical Service Administration v. Dickerson, 362 So.2d 906 (Ala.1978); Associated Grocers v. Graves Co., 272 Ala. 158, 130 So.2d 17 (1961); Ex parte H.L. Rabum & Co., 384 So.2d 1075 (Ala.1980).
We cannot agree with the circuit court’s interpretation of the venue statute. In construing the provisions of § 37-14r-9, we find that the critical question is: In what judicial circuit did the “rendition” or “extension” of electricity occur? We think that the record clearly shows that APCo’s transmission line servicing EWRN’s facility is located entirely in Shelby County. In addition, the contract between APCo and EWRN for electrical power provides that the point of “delivery” of electricity to EWRN is the point of connection between APCo’s meter structure bus and EWRN’s conductors, which are located in APCo’s substation on the Shelby County side of the facility. Thus, the “rendition” or “extension” of electrical service by APCo occurs only in Shelby County. Consequently, we conclude that the proper venue was Shelby County.
Accordingly, we reverse the judgment and remand the cause with directions to transfer it to the Circuit Court of Shelby County. Because we reverse on the venue question, we do not reach the merits of this appeal.
REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.

. The Probate Court of Shelby County denied APCo’s request for condemnation, but the Circuit Court of Shelby County granted its application and APCo constructed the transmission line.

. The Territory Acts generally provide that any new retail electric customer outside municipal limits as of April 26, 1984, is to be supplied by the electric utility whose distribution lines existing as of January 1, 1984, are closest to that customer, and any other utility is prohibited from extending its lines to the customer. However, any electrical supplier may serve a new *912 industrial customer under the circumstances set out in § 37-14-3:
"§ 37-14-3. Electric service outside existing municipal limits.
"Except as otherwise provided in subdivisions (2), (3), and (4) of this section in areas outside existing municipal limits (including areas annexed to municipalities on or after April 26, 1984), no electric supplier shall construct or maintain electric distribution lines for the provision of retail electric service to any premises being provided retail electric service by another electric supplier, or to any new premises located within the boundaries of assigned service areas of another electric supplier, even if the premises is within municipal limits and the electric supplier in whose assigned area the premises is located has no franchise from the municipality in which such premises is located. Assigned service areas outside existing municipal limits are hereby established as set forth in this section.
“(1) Except as specified in subdivisions (2) and (3) of this section herein, each electric supplier is hereby assigned the sole obligation, in accordance with its established rules and regulations, in areas outside existing municipal limits (including areas annexed to municipalities on or after April 26, 1984 whether or not a franchise has been granted by the municipality to the electric supplier to whom an area annexed has been assigned or to any other electric supplier), for provision of retail electric service to all new premises located in closer proximity to existing distribution lines of such supplier than the nearest existing distribution lines cf any other electric supplier. No other electric supplier shall render electric service to such premises. Thus, the assigned service area of each electric supplier in areas outside existing municipal limits is defined as the area or areas consisting of a line or lines drawn equidistant between the existing distribution lines of such electric supplier and the nearest existing distribution line of any other electric supplier. Where a premises is located in the assigned service area of two electric suppliers, the supplier in whose assigned area the majority of the square footage of the premises falls shall provide the service. The above assignment shall also apply to areas within tihe existing municipal limits in the event the primary electric supplier fails to exercise the option to purchase set forth in Section 37-14 — 4.
"(2) Notwithstanding the above limitations stated in this section on construction of facilities to serve customers in areas outside existing municipal limits, an electric supplier may construct, operate and maintain facilities for provision of retail electric service to any new industrial customer not presently or previously served by another electric supplier, in an area outside existing municipal limits where the initial electric service requirement to such industrial customer, under normal operations and with a six-month growth period permitted from date of initial service, is equal to or greater than 2500 kilowatts as measured over a 15-minute integrated period, upon written request to such electric supplier by the industrial customer to be served."
(Emphasis added.) See § 37-14-32(1), (2).

. APCo contends that it takes approximately 750 kw of electricity to feed a transmitter with an output of 500 kw.

. Coosa Valley alleged in its complaint that "[jurisdiction [and venue] of this case [arise] under Sections 37-14-9 and 37-14-37 Ala. code." We noted that § 37-14-9 of the 1984 Act and § 37-14 — 37 of the 1985 Act are identical.

. The Tenitoiy Acts offer the following definition:
“(3) Premises. The building, structure or facility to which electricity is being metered or is to be furnished and metered, including all meters on such building, structure or facility through which electricity is delivered or to be delivered. Such term shall also include any building, structure or facility which is reconstructed to replace a previously existing building, structure or facility of substantially the same size. In the event two or more buildings, structures, or facilities are located on one tract of land utilized by one customer, those buildings, structures, or facilities which are or will be served through a different meter shall be considered a separate premises.”
Ala.Code 1975, § 37-14-2..