MADDOX, Justice.
This appeal involves the rights of competing electric-service suppliers to provide electric service to an industrial customer. The facts are not seriously disputed. The specific question presented is whether Alabama’s Electric Service Territories Acts, Ala.Code 1975, § 37-14-1 et seq., and § 37-14-30 (“the Service Territories Acts”), authorize an electric utility to.provide service to a new industrial customer that is physically located in the service territory of another electrical supplier even though the new industrial customer *413 did not reach the threshold of using 2500 kilowatts of electricity as measured over a 15-minute integrated period during the first six months after initial service.

Facts

Coosa Valley Electric Cooperative, Inc. (“Coosa Valley”) originally filed this action against Alabama Power Company in the St. Clair Circuit Court. Coosa Valley challenged Alabama Power’s right to serve a shortwave radio broadcast station, constructed by Eternal Word Television Network, Inc. (“EWTN”), which broadcasts religious programming throughout the world. Coosa Valley based its challenge on the ground that EWTN’s radio broadcast station was physically located in Coo-sa Valley’s assigned service area. Alabama Power moved to transfer the action to the Circuit Court of Shelby County. The trial judge denied the motion; after holding a bench trial, he ordered Alabama Power to remove its facilities from EWTN’s premises and to discontinue its service to EWTN, and to pay Coosa Valley a statutory penalty of 25% of Alabama Power’s gross revenues derived from its service to EWTN.
Alabama Power appealed. This Court, applying the venue provision of the Service Territories Acts, §§ 37-14-9(b) and 37-14-37(b), Ala.Code 1975, held that Alabama Power’s “rendition” or “extension” of electric service to EWTN had occurred in Shelby County, rather than in St. Clair County, and, thus, that Shelby County, rather than St. Clair County, was the proper venue for this action. Alabama Power Co. v. Coosa Valley Elec. Coop., Inc., 670 So.2d 910 (Ala.1995). In that appeal, this Court specifically stated that it was addressing the question of the proper venue for the action.
After the case was transferred to Shelby County, Coosa Valley moved for a summary judgment, based on the transcript and record of the St. Clair trial and on the St. Clair Court’s order on the merits.' Alabama Power filed a cross-motion for summary judgment. After holding a hearing, the Shelby Circuit Court, based on the evidence before it — evidence that included additional deposition testimony — entered a summary judgment in favor of Alabama Power. Coosa Valley appealed, but after the appeal was docketed in this Court, the parties filed a joint motion to stay the appeal until this Court had issued its decision in Alabama Power Co. v. Citizens of the State of Alabama, 740 So.2d 371 (Ala.1999).[1]
I.
Coosa Valley argues that this Court-, in Alabama Power Co. v. Citizens, supra, “affirmed the Legislature’s choice to' .enact the 1985 Electric Service Territories Act as a ‘policy decision to prevent wasteful duplication of electric facilities across the state’ ” and that “[cjustomer preference of suppliers is not a factor under the Act.” Although Coosa Valley recognizes that the Acts provide an exception to the service-territory rule in cases involving a new industrial customer located in another supplier’s service territory, it nevertheless claims that the exception is very limited and that, under the facts of this case, Alabama Power did not show that it came within that limited exception. In arguing that the exception does not apply, Coosa Valley states in its brief:
“The [1985 Electric Service Territories Act] provides a very limited exception to service territories, allowing an electric supplier to serve a new industrial customer in another utility’s territory only if
“the initial electric service requirement to such industrial customer, under normal operations and with a six-month growth period permitted from date of initial service, is equal to or *414 greater than 2500 kilowatts [as measured over a 15-minute integrated period]....”
“Coosa Valley respectfully submits that this language is a [legislative choice to provide a strict, ‘bright-line’ time limit within which to measure the exception’s application, and that the language employed can only mean what it plainly says: if the customer’s initial electric usage is less than 2500 kilowatts, then it must reach that level unth-in the first 6 months after the ‘date of initial service’. If not, the exception does not apply, regardless of the reasons why, since it is expressly limited to ‘a six-month growth period permitted from date of initial service’.”
Coosa Valley then argues that “[i]t was undisputed that EWTN’s date of initial service was October 30, 1992, and it was likewise undisputed that EWTN’s electric usage did not reach [the 2500-kw level] within 6 months after this date,” and that when EWTN finally did reach the 2500-kw level, EWTN’s électric usage was “artificially high” because all óf EWTN’s electrical devices were turned up as high as they would go, and thus, such electrical usage did not represent electrical usage under a “normal operations” mode, as Coosa Valley says the law requires.
Alabama Power counters Coosa Valley’s argument by saying that the restrictions set out' in the Service Territories Acts apply only to “distribution lines” and that its service to EWTN is by a “transmission line.”[2] Alabama Power says that the Service Territories Acts would effectively require suppliers violating the Service Territories Acts to forfeit substantial investments that have been made to service the industrial customer[3] and to pay substantial penalties; therefore, Alabama Power argues, the Act should not be strictly construed, as suggested by Coosa Valley.
Alabama Power answers Coosa Valley’s argument that EWTN did not reach the 2500-kw hour usage requirement within 6 months after it first received service from Alabama Power, by stating that Coosa Valley is misreading the statute, by removing from it the words “under normal operations.” Alabama Power.argues that “[a]l-though Coosa Valley concedes that industrial customers must attain the 2500[-]kw threshold under ‘normal operations,’ the interpretation of Alabama Code § 37-14-32(2)[4] that it urges this Court to adopt impermissibly removes the phrase ‘normal operations’ from the New Industrial Customer Exception.” According to Coosa Valley, the exception applies only when the industrial customer achieves the required 2500-kw usage level within 6 months of initial service, whether or not the custom *415 er’s business is operating normally. Coosa Valley argues that “[t]his Court should adopt the reasoning and order of the St. Clair Circuit Court, which faithfully followed the language of the statute and accorded judicial deference to the Legislature’s clearly expressed policy and intent that the 2500[-] kw requirement must be attained within the first 6 months [of the date of the initial service] and as the facility is normally operated.” Alabama Power counters by stating, “If the Alabama Legislature intended to limit to six months the period within which an industrial customer must achieve normal operations, it could have easily included the word ‘mthin ’ before the phrase ‘six months from the date of initial service,’ ” as that phrase is used in § 37-14-32(2), Ala.Code 1975.
The Shelby Circuit Court addressed this issue by holding that “had the legislature intended to limit the six-month growth period simply to the date of the initial service, the words ‘under normal operating conditions’ would have been left out of the statute entirely.”
Coosa Valley states that new industrial customers who prefer one utility over another do not have an indefinite period within which to achieve the 2500->kw usage level, and it urges us ho accept.the reasoning applied by the St. Clair Circuit Court in the order it entered before this Court directed it to transfer the case. In that order, the St. Clair Circuit Court stated:
“[T]he plain language of the statute says the 2500 kw minimum must be met withr in.6 months from date of initial service— the normal operations/date of initial service provision is clearly not an either-or test. If [Alabama Power’s] argument were accepted, the 6 month time period would never run until ‘normal operations’ were achieved, which could obviously be delayed indefinitely at the customer’s pleasure. This would make the 6 month time period meaningless and read the ‘and’ completely out of the section, contrary to well-known statutory construction.”[5]
Coosa Valley’s argument is summed up in its brief as follows: “[Section] 37-14-32(2) allows a new industrial customer 6 months from initial service to reach 2500 kw, and no longer.”
Alabama Power argues that Coosa Valley’s reading of the statute is too rigid, and that where, as in this case, the customer was not operating normally during the first six months, Alabama Power should not have to forfeit its statutory right to service the new industrial customer. The Shelby Circuit Court’s conclusion was no doubt based, in part, upon its consideration of testimony indicating that one of the purposes behind the new-industrial-customer exception was to foster competition among electric-service suppliers' for new industrial customers.
II.
After considering the parties’ arguments and reviewing the record, we conclude that the Shelby Circuit Court correctly held that the Legislature intended .that the six-month growth period applied to new industrial customers was to begin with the initial service under normal operations. Consequently, the summary judgment for Alabama Power is due to be affirmed.
AFFIRMED.
COOK, LYONS, and BROWN, JJ., concur.
HOUSTON, J., concurs specially.
ENGLAND, J., concurs in the result.
JOHNSTONE, J., dissents.

. The stay was granted on July 3, 1997, and was dissolved on August 2, 1999, after this Court had ruled on an application for rehearing filed in Alabama Power Co. v. Citizens, supra.

. Alabama Power states that the Legislature defined a "distribution line” in § 37-14-31(4) as "An electric conductor which is operated at 35,000 volts or less, up to but not including the, service drop.” Alabama Power contends that it serves EWTN with a 115,000-volt "transmission” line, as opposed to a distribution line. Alabama Power supports its argument by pointing out that this Court, in denying Alabama Power’s motion to transfer venue, noted that Alabama Power construct- ' ed a transmission liné' to serve EWTN. See Alabama Power Co. v. Coosa Valley Elec. Coop., Inc., 670 So.2d 910, 913 n. 1 (Ala.1995).

. Ala.Code 1975, § 37-14-37(b), states that a violator must “remove its facilities constructed for the rendition of retail electric service.”

.Section 37-14-32(2), which sets out an exception to the general rule stated in § 37-14— 32(1), reads, in pertinent part:
"Notwithstanding [limitations previously imposed,] an electric supplier may construct, operate and maintain facilities for provision of retail electric service to any new industrial customer not presently or previously served by another electric supplier in an area outside existing municipal limits where the initial electric service requirement to such industrial customer, under normal operations and with a six month growth period permitted from date of initial service, is equal to or greater than 2500 kilowatts as measured over a 15 minute integrated period, upon written request to such electric supplier by the industrial customer to be served.”

. The St. Clair Circuit Court apparently was referring to the word "and” in the phrase "under normal operations and with a six-month growth period permitted,” appearing in § 37-14-32(2); Ala.Code 1975. •